**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**     ) | |
| ) | |
| **Plaintiff,**     ) | |
| ) | **Cr. No. 04-10097-T** |
| **vs.**     ) | |
| ) | |
| **DEMETRIUS VAN CROCKER,**     ) | |
| ) | |
| **Defendant.**     ) | |

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S
SENTENCING MEMORANDUM**

COMES NOW THE UNITED STATES OF AMERICA, by and through David Kustoff, United States Attorney, and Frederick H. Godwin, Assistant United States Attorney for the Western District of Tennessee, in response to the Defendant's Sentencing Memorandum as follows:

### A.   Factual Objections

The defendant objects to certain factual allegations contained in the Presentence Report, specifically those allegations contained in paragraphs 9-14 and 31. The defendant contends that these allegations do not contain sufficient factual basis for the court to determine that Mr. Crocker was serious about the things he stated, in recorded conversations, that he wanted to do. Crocker also contends that facts set out fail to show that he engaged any conduct evidencing intent to injure the United States. He also contends that he had no ability to use the chemical weapons that he was convicted of attempting to acquire.

This Court heard the entirety of proof in this case. Every recorded conversation

made by both the cooperating witness (CW) and the undercover agent (UCA) was introduced into evidence. The proof before this court confirms the information in paragraphs 9-14).

Witness Lynn Adams testified that he met the defendant through a mutual acquaintance. After a period of time Crocker begin to tell Adams about his feelings toward various levels of government. Crocker told Adams of his deep hatred for the American Government and any government figure. Crocker made statements to Adams that he wanted to obtain materials to make a bomb so that he could blow up the courthouse or other government building. Adams said that when he first heard Crocker talking this way he thought it was just "BS". However, as Adams talked to Crocker more and had more meetings with him, Adams came to realize Crocker was serious about what he said he wanted to do. Crocker made statements to Adams giving him the impression that he idolized Timothy McVeigh, one of the perpetrator's of the bombing of the Murrah Federal Building in Oklahoma City, OK. Crocker made the statement that McVeigh had done things right. Adams said that Crocker was fascinated with Adolf Hitler and with the way that Hitler wanted to destroy the Jewish Nation. On many occasions Crocker stated that he was anti-Semitic. Crocker expressed hatred for Jews, Blacks, Middle Easterners and Orientals. The impression he gave Adams and others was that if you weren't Aryan (white) you weren't anybody.

When Crocker talked about blowing up government buildings, Adams asked him whether or not he realized that he would be killing innocent people, women and children. Crocker's response was " F--- them. Let God sort them out."

Crocker also told Adams that he had made nitroglycerin in the past. ( Lynn Adams at TR 124-128).

Upon cross examination Adams reiterated that Crocker had told him he had a distinct dislike, or hate for all government, Federal Government, State Government, City Government. (Lynn Adams at TR 142-143)

Further, Exhibit 6, the CD of the recording made between FBI Special Agent Steve Burroughs and Crocker on September 16, 2004 also confirms the information contained in paragraph 10 that Crocker stated that it would be a good thing if someone would detonate a weapon of mass destruction in Washington DC while Congress and the Senate were in session. (Exhibit 6)

In Exhibit 7, the recording of the September 29, 2004 conversation between Crocker and Agent Burroughs the defendant advised Burroughs that he wanted to obtain sarin nerve agent in order to use it against a Federal Courthouse. He then goes on to say that in any war there is collateral damage. (Transcript 9/29/04, page 40) (SA Steve Burroughs at TR 218) Later in that same conversation, Crocker bragged of his ability to kill "government people" and racially identifiable persons. Crocker also talked about his desire to explode a briefcase bomb, using C-4 explosive, containing stolen plutonium while the House and Senate were in session in Washington DC. (Exhibit 7 9/29/04; transcript at pages 40-45).

Crocker's intent to harm the United States and other levels of government is shown in his own words on the tapes. He attempted to obtain nerve gas and C-4 so that he could have the ability to carry out this intent. Further, the combination of parts Crocker possessed at his home which, when combined, constituted an improvised explosive (destructive) device as alleged in Count 5 of the Indictment. This showed he had the present ability to carry out his threat to attack government buildings at the time.

Based on the testimony of Dr. Frederic Berg (at TR-116) the chemical weapons expert, and Crocker's conversations with Agent Burroughs in Exhibit 7, Crocker understood that he could make crude GB by mixing the Diflouro (DF) he was attempting to obtain with something as common as rubbing alcohol.  Thus, the defendant's contention that he had no ability to carry out his threat to use GB is without  merit.  If he had actually obtained DF (the GB precursor  he was attempting to obtain) all that would have been needed to make crude GB (sarin) was a common substance obtainable at any grocery or pharmacy.

The factual assertions contained in paragraph 31 do not affect Crockers guideline calculation.  They are, however confirmed by reference of Exhibit 9, the recording of Burroughs conversation with Crocker on October 7, 2004.  These statements by Crocker are relevant to the courts consideration of Crocker's history and character under 18USC §3553(a).

The  factual objections raised by the defendant regarding paragraphs 56 - 60 do not appear to have any bearing on Crocker's sentencing in this case.  They do however appear to show that he was engaged in an effort to divest himself of assets after indictment and before  trial in this case.

### B.    Legal Objections

### Applicable Guideline

Crocker objects to paragraph 19, which sets the base offense level of 42 under USSSG §2M6.1(a)(1)(A).  Section 2M6.1(a)(1)(A) requires intent to injure the United States. He contends the evidence in this case fails to establish that Crocker had either the intent or ability to injure the United States.  Based on the facts set forth above, in the United States' response to defendant's factual objections,  the United States contends the defendant's own words show that he had extreme hatred for, and intent to injure the United

States, by using the GB (sarin) against a federal courthouse. Consequently the Presentence Report accurately uses the proper guideline section.

The defendant contends that his offense level should be twenty pursuant to USSSG §2M6.1(a)(4)(B). For this section to apply, USSSG §2M6.1(a)(4)(B)(ii) requires that the offense did not involve <u>any</u> conduct evidencing an intent or ability to carry out the threat. Given the proof before the court in this case, a contention that the defendant did not engage in <u>any</u> conduct evidencing an intent or ability to carry out his threat to use these weapons is facetious. Section 2M6.1(a)(4)(B)(ii) requires an absolute absence of conduct regarding an intent to carry out the threat. This record is repleat with evidence of such intent.[1]

## Terrorism Enhancement

Crocker also objects to paragraph 21 of PSR and the application of USSSG §3A1.4, the enhancement for a "felony that involved or was intended to promote a federal crime of terrorism." He contends this terrorism enhancement does not apply because the evidence trial failed to show that Mr. Crocker was involved in any federal crime of terrorism as defined in 18USC §2332b(g)(5)(b). He contends Crocker's actions were not calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.

Crocker's hatred for all levels of government, federal, state and local in his recorded statements regarding attacks on congress when in session, and upon federal or state

---

[1] While the United States believes there is abundant evidence to the defendant's intent to injure the United States with the sarin, if such was absent, the appropriate guideline would be USSSG §2M6.1(a)(2). Further, USSSG §2M6.1(b)(1) would require that that base level be increased by two points because the offense involved a threat to use a listed precurser or listed toxic chemicals, or a weapon of mass destruction that contains any agent, precurser, or toxic chemical. <u>See</u> (§2M6.1(b)(1). Difluro is a listed precursor in the Chemical Weapons Convention. (Dr. Frederic Berg at TR 113)

courthouses shows that his intent was to influence or affect the conduct by intimidation or to retaliate against government at all levels. Crocker's attempted possession of Sarin nerve gas, his possession of C-4 and of components of a destructive device were intended to promote, variously, violations of 18USC §229 (relating to chemical weapons); 18USC §844(f)(2) (relating to arson and bombing of government property) 18USC §844(i) relating to arson and bombing property used in interstate commerce); 18USC §930(c) (relating to killing or attempted killing during an attack on a federal facility with a dangerous weapon) and 18USC §2332f (relating to bombing of public places and facilities). Each of the foregoing is a listed Federal Crime of Terrorism in 18USC §2332b(g)(5)(B)(i).

18USC §2332f makes it a crime to unlawfully deliver, place, discharge or detonate an explosive or other lethal device in, into or against a place of public use, a state or government facility or to attempt or conspire to do so.

18USC §2332f(e)(3) defines state or government facility as including any permanent or temporary facility that is used or occupied by a representative of a state, members of government, the legislature or the judiciary or by officials or employees of the state or other public authority. Crocker's statement about his desire to blow up federal or state courthouses and further his statement to Ms. Betty Balew, the dispatcher at the Carol County Sheriff's Department, show that his possession of C-4 and his possession of components were intended to promote this crime. (Betty Balew at TR236-239)

Crocker also contends that the PSR inaccurately calculates his offense level. He contends Application Note 2 chapter 5, part A of the United States Sentencing Guidelines states that an offense level of more than 43 is to be treated as an offense level of 43. An offense level of 43 calls for a life sentence regardless of criminal history. Crocker's criminal history category is six, due to the terrorism enhancement.

Nothing in this paragraph changes the requirement that the court must properly

-6-

calculate each component of the advisory guideline sentencing calculation.  See U.S. v Forrest 402 F.3d 678, 684 (6th Cir, 2003)  While this is the first case that the undersigned attorney for the government has ever seen where the level of conduct score exceeds 43, the situation is nonetheless analogous to the situation that is far more frequently seen in criminal history calculations.  Defendants quite often have more than thirteen criminal history points.  Nonetheless their criminal history category can be no higher than six.  The fact that a criminal history scale can be no higher than category six does not eliminate the requirement that the court accurately calculate what the criminal history score actually is. In this case the court is required to accurately calculate all components of the guideline sentence.  The application note cited by the defendant simply stands for the proposition that if the offense level is greater than level 43, the sentence cannot be greater than life, a proposition that seems quite obvious.

### C.     Section 3553(a)  Analysis

The United States disagrees with the defendant's  Section 3553(a) Analysis.  The defendant in this case attempted to obtain a chemical weapon of mass destruction.  (GB) (Sarin) nerve gas is a weapon so horrible that it is been banned by civilized nations under the terms of the Chemical Weapons Convention.  Shortly after trial of this case the United States completed its destruction of its last stock piles of GB precursor.  The defendant also attempted to obtain this nerve agent, along with military grade plastic explosives (C-4). This was to add to his already existing possession of components for a destructive device. A review of witness testimony, and the defendant's own words on tape, lead to the conclusion that Crocker wished to use these weapons against the government.  His own words also show that he believed his hatred for  various groups different from him entitled him to injure or kill them.  He idolized mass murderers such as Timothy McVeigh and he

idolized perpetrators of genocide such as Adolf Hitler.  The defendant's long, and self proclaimed, history of racial, religious, ethnic and anti-government hatred reinforce the seriousness of his crimes.  The fact that Crocker has no major adult criminal history is not uncommon for terrorists.

     The public needs to be protected from further crimes of this defendant.  He has shown no remorse whatsoever for his actions.  There is nothing before this court that shows he regrets anything he did.  Not all terrorist threats come from outside of this country.  Unfortunately, a small but significant group of people born and raised in this nation are willing to perpetrate grave offenses against the nation and its people.  Failure for the sentence to reflect the seriousness of Mr. Crocker's crimes will fail to provide respect for law and certainly will not provide a just punishment for the offense.

        Respectfully submitted,

        DAVID KUSTOFF
        UNITED STATES ATTORNEY


By:   s/ Frederick H. Godwin
        FREDERICK H. GODWIN
        Assistant United States Attorney
        167 N. Main, Room 800
        Memphis, Tennessee 38103
        901-544-4231
        (# 011511 Tennessee)

## **CERTIFICATE OF SERVICE**

I, FREDERICK H. GODWIN, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing Motion has been filed via the District Court's electronic case filing system and e-mail to Mr. Randy Alden, Assistant Federal Defender, 200 Jefferson Avenue, Suite 200, Memphis, Tennessee 38103, counsel for Defendant.

This 14th day of November, 2006.

                                  Respectfully submitted,

                                  DAVID KUSTOFF
                                  UNITED STATES ATTORNEY

                     By:    s/ Frederick H. Godwin
                                  FREDERICK H. GODWIN
                                  Assistant United States Attorney
                                  167 N. Main, Room 800
                                  Memphis, Tennessee 38103
                                  (#011511 Tennessee)